## JULIA B. DIXON AND ROBERT B. DIXON *vs.* WILLIAM T. DIXON ET AL.

*Specific Performance—Bill ·Must Set Forth Complete Contract—Certainty and Mutuality—Evidence of Extrinsic Facts Showing Specific Performance to be Inequitable.*

In a bill for the specific performance of defendants' contract to purchase certain property, the only contract set out was a writing signed by the defendants saying that they accepted plaintiff's offer to sell the property at a designated price. The terms of the offer itself did not appear. *Held*,

1st. That it was obligatory on the plaintiff to set forth the whole agreement, which was composed both of offer and acceptance, so that the

Court may see whether as an entirety it is definite and certain and such as ought to be specifically enforced, and since the bill in this case does not disclose what the contract of sale really was a demurrer lies thereto.

2nd. That the bill is also defective in that it fails to show a contract of sale binding upon plaintiff as well as defendants, since the Court will not specifically execute a contract which is lacking in mutuality of obligation.

The defendant in a bill for specific performance is entitled to show by parol evidence that there are circumstances which make it inequitable to grant the relief asked for, although there exists a valid contract, and in such event the Court in its discretion will refuse specific performance and leave the plaintiff to his remedy at law.

When a vendor agreed, at the time of making a written contract of sale, that certain other matters in which vendor and vendee were concerned should be adjusted so that the funds due to the vendee in those transactions might be used in paying the purchase-money, it would be inequitable to enforce the contract of purchase against the vendee until these precedent conditions have been complied with.

Appeal from a decree of Circuit Court No. 2, of Baltimore City, (SHARP, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and JONES, JJ.

*Thomas R. Clendinen* for the appellants :

There was no evidence, either as shown by the letter of appellants or by anything else in the case, legally sufficient to prove such an agreement as is capable of being specifically enforced; or to show with certainty, either any obligation on behalf of appellants, or, if any, what it was, with sufficient definiteness, either as to the property or the terms or anything else to authorize it to be specifically performed. Application for specific performance is not a matter of right, but addressed to the sound and reasonable discretion of the Court; it is granted or withheld according to the circumstances of the case, and a Court of equity must be satisfied that a contract sought to be enforced is fair and just and reasonable, and equal in all its parts, and founded on an adequate consideration before the Court will interpose with this extraordinary as-

sistance.   It must be mutual, otherwise equity will not exe-
cute it, and both parties must have, by the agreement, a right
to compel a specific performance, otherwise the Court would
decree specific performance, where the party called upon to
perform might be required to do so, if disadvantageous to
him, and yet if advantageous to him he could not compel a
performance.   "This is no equity."   *Geiger* v. *Green*, 4 Gill,
472; *Waters* v. *Howard*, 8 Gill, 215, and note *e.*

Agreement for the sale of land must be so certain on its
face, as to description, and all essential matters, as not to re-
quire any other proof by parol or otherwise to enable it to be
enforced.   It must be enforceable upon its own written stipula-
tions, without anything to help it.   It cannot be added to or
aided by parol evidence, but must stand or fall upon its own
provisions.   *Dorsey* v. *Wayman*, 6 Gill, 59; *Taney* v. *Bachtell*,
9 Gill, 206; *Hammond* v. *Norriss*, 2 H. & J. 113, note *f*;
*Thomas* v. *Turvey*, 1 H. & G. 297, 438; *Neel* v. *Hughes*, 10
G. & J. 5-10; *Moale* v. *Buchanan*, 11 G. & J. 322; *Frank* v.
*Miller*, 38 Md. 459; *Lazear* v. *Nat. Union Bank*, 52 Md. 119;
*Slingluff* v. *Builders' Supply Co.*, 89 Md. 557; *Balto. Perma-
nent Bldg. and Loan Society* v. *Smith*, 54 Md. 200.

*George Whitelock* and *J. Hanson Thomas* for the appellee :
The contract, as set out in the bill of complaint, is an abso-
lute agreement under the Statute of Frauds.   The considera-
tion is definitely stated ; it shows what is the subject-matter
of the contract and who are the parties.   In short, on its face,
it is a definite and complete contract in all its terms.   There
is no ambiguity, nor is it necessary, on its face, to supply any
of its terms by parol evidence.   Yet, the appellants allege in
the third paragraph of their answer (the portion excepted to) :
" It was part of the agreement, for the purchase by these de-
fendants of the interest of William T. Dixon in the property
mentioned in the bill of complaint, *and as part of the consider-
ation thereof*, agreed between the said William T. Dixon and
these defendants that anything connected with or in any way
arising out of the different interests mentioned of the said John

B. Dixon should be investigated and full settlement and explanation made to these defendants," etc.   To introduce parol evidence to prove such an agreement would clearly violate the letter and spirit of the Statute of Frauds in regard to requiring contracts for the sale of land to be in writing and be subversive of all the principles of that statute.   *Taney* v. *Bachtell*, 9 Gill, 205; *Frank* v. *Miller*, 38 Md. 460; *Lazear* v. *Union Bank*, 52 Md. 119.

The agreement was sufficiently definite.   In *Kraft* v. *Egan*, 76 Md. 243, 252, the property was described in an agreement to sell as follows : " On the east side of Belt street and south of Cross street, running to the Port Warden's line, owned by Kraft and Winebrenner, and occupied as a packing-house by P. F. and D. E. Winebrenner," and it was contended that the description was uncertain and indefinite.   But this Court held that it was a sufficient description and that parol evidence could be introduced to identify the property.   In the opinion, the case of *Hurley* v. *Brown*, 98 Mass. 545, was cited, in which the writing was as follows : " Lynn, April 14, 1866.   $50. Received of John and Michael Hurley the sum of fifty dollars, in part payment of a house and lot of land, situated on Amity street, Lynn, Mass.   The full amount is $1,700.   This bargain to be closed within ten days from the date hereof."

The Court said : " We regard the fair construction of the words used to be, that they relate to a house and lot owned, at the time the memorandum was signed, by the parties who subscribed it.   *Thus interpreted they are sufficiently certain, and the oral evidence is needed only to apply the description.*   This must be done by extrinsic evidence in every contract or conveyance, however minutely the boundaries of the estate may be set forth.   The maxim, ' *id certum est quod certum reddi potest*,' is the established rule of construction in a suit of specific performance.   The contract in the present case seems fairly within its application."   See also—*Oglivies* v. *Foljambe*, 3 Mer. 53 ; *Scarlett* v. *Stein*, 40 Md. 528 ; *Thomas* v. *Turvey*, 1 H. & G. 435 ; *Scanlan* v. *Geddes*, 112 Mass. 17 ; *Slater* v. *Smith*, 117 Mass. 96 ; *Black* v. *Crowther*, 74 Mo. App. 480 ; *Murray* v. *Mayo*, 31 N. E. Rep. 1063.

McSHERRY, C. J., delivered the opinion of the Court:

The appeal in this case was taken from a decree passed by Circuit Court No. 2, of Baltimore City.  The decree directs the specific performance of an alleged contract for the sale of land.  The bill of complaint was filed by the appellees, who are the vendors.  The defendants, who are the vendees and appellants, answered.  To several paragraphs of this answer the appellees excepted.  These exceptions were sustained and leave was given to answer further.  Thereupon the appellants demurred to the bill upon the ground that the contract of sale set out therein was vague, indefinite and uncertain and not capable of being enforced.  Testimony was taken and to much of it exceptions were filed by the appellants.  Finally the demurrer was overruled, the exceptions to the testimony were disallowed and the decree appealed from was signed.  It is apparent from this statement that it will be necessary at the outset to examine the averments of the bill and answer, because, from these averments the questions governing this controversy arise.

Upon turning to the bill it will be found that the third paragraph is the one which sets out the agreement.  That paragraph is in these words: "Your orators further allege that they heretofore agreed to sell to the defendants, and the defendants did heretofore enter into a written agreement with the said William T. Dixon, dated the 30th day of March, 1899, and signed by them, by which agreement they did contract to purchase the said William T. Dixon's one-half interest in the said property, known as No. 34 Hopkins Place and 33 South Liberty street, Baltimore, at forty-two thousand five hundred dollars.  And your orator files herewith a true copy of the said agreement, marked "Exhibit Agreement," the original of which was duly delivered to and is now in the possession of the said William T. Dixon."  The exhibit to which reference is made reads as follows: "Baltimore, Md., Mr. William T. Dixon.  We will accept your offer to buy your half interest in the property known as 34 Hopkins Place and 33 S. Liberty street, Baltimore, at $42,500, March 30th, 1899."  Signed Julia B. Dixon, Robert B. Dixon.

This is the agreement relied on, and its sufficiency, certainty
and mutuality are assailed by the demurrer. The paragraphs
of the answer which were excepted to and were exscinded by
the Court set forth, in substance, that the property in question
had been owned by William T. Dixon and John B. Dixon as
tenants in common ; that they had been co-partners in busi-
ness ; that John B. Dixon died intestate, and upon his death
his undivided interest in this property vested in his widow and
son, the two appellants ; that William T. Dixon, the surviving
partner, undertook the settlement of the firm's business ; that
the father of William T. Dixon and John B. Dixon died leaving
a considerable estate, to a portion of which John B. Dixon was
entitled ; that the settlement of that estate devolved upon Wil-
liam T. Dixon ; that it was understood between the appellees
and the appellants, and was in fact part of the terms of the agree-
ment for the sale by the appellants of their undivided interest
in the property in controversy to the appellees, that everything
connected with and in anyway arising out of these different
relations should be investigated and settled and that all things
not heretofore accounted for in these matters should be ad-
justed before the appellants would be asked to pay the pur-
chase price for the property, so that any funds to which they
might be entitled from these sources could be used by them in
paying for the property. The expurgation of this defense
from the answer, and its consequent disallowace, is the second
error of which the appellants complain. These two branches
of the case present two distinct propositions ; and these prop-
ositions are, *first,* that the contract set up in the bill cannot
be specifically enforced because it is too indefinite and vague
and is lacking in mutuality ; *secondly,* that the facts recited in
the answer, if true, show that it would be inequitable and unjust
to enforce the contract by a decree of a Court of equity, and
would justify that Court in remitting the parties complaining
to a Court of law for redress. Of these in their order.

It is thoroughly well settled and perfectly understood that
the granting of relief, by way of specific performance, is not a
matter of right, but one which rests in the sound judicial as

contradistinguished from the arbitrary discretion of the Court. This discretion is one which is regulated by fixed and established rules. The relief will be afforded or denied as the circumstances of each case may warrant. *Kraft* v. *Egan*, 78 Md. 36; *Semmes* v. *Worthington*, 38 Md. 298. Amongst these rules there is probably none more familiar than that which requires every agreement to be fair, reasonable, *bona fide*, certain in all its parts, mutual and founded on a good or valuable consideration in order that it may merit the interposition of a Court of equity. We have no occasion to deal with any of these elements save those of certainty and mutuality. Now, what is meant by certainty and mutuality as applied to contracts which are sought to be specifically enforced? And how does the contract set up compare with the standard fixed by the adjudged cases? The contract must be definite and certain in its terms and must be free not only from all ambiguity, but likewise free from all shade or color of ambiguity. *Miller's Eq. Pro.*, sec. 683 and cases in notes 1 and 2. It must be so clearly proven as to satisfy the Court that it constitutes the actual agreement between the parties. *Horner* v. *Woodland*, 88 Md. 512. If this were not the rule Courts might " enforce precisely what the parties never did intend or contemplate." *Waters* v. *Howard*, 8 Gill, 277. There must be a description of the property sold and the terms upon which it has been sold must be stated. These terms include not only the price to be paid, but ordinarily the time the payment is to be made; though it has been held that a contract to give a mortgage was not defective by reason of no time being named for the payment of the mortgage debt, because in such a case a reasonable time in the discretion of the Court would be allowed. *Triebert* v. *Burgess et al.*, 11 Md. 463–4. Where all of the terms do not appear, or where it is manifest from the nature of the contract that there are or may be other terms not disclosed, there would be no such certainty as this doctrine of equity demands. The bill alleges that there was a written agreement between the parties, and it refers to the exhibit already quoted as the " said agreement." When that paper is read, whilst it sufficiently describes

the property, *Kraft and Winebrener* v. *Egan*, 76 Md. 243, it reveals at once the fact that it is not an agreement, but simply an *acceptance* of an antecedent *offer*. When a contract is made by an offer and an acceptance *both* constitute the contract. *Wills* v. *Carpenter*, 75 Md. 84. Neither the one nor the other by itself will make the contract. The acceptance without the offer does not show the terms of the offer, and if both together form the contract, it is obvious that all the terms may not be disclosed by the acceptance alone. When it is apparent that the paper relied on as the evidence of the contract is merely an acceptance of a previous offer it cannot be said that the terms of the contract as set out are definite and certain, unless the acceptance purports to recite the contents of the offer. It is possible that the offer contains conditions which cannot be gathered from the acceptance. The decree in this case illustrates this. The decree requires the defendants to pay, not only the forty-two thousand five hundred dollars mentioned in the acceptance, but the further sum of one hundred and eighty-five dollars and twenty-four cents, said to be the purchaser's proper proportion of the taxes, water rent, insurance premiums and rent of the tenant. Does the *offer* made by the vendors contain a provision that the vendees are to pay any part of this sum of one hundred and eighty-five dollars ? If it does not, but simply proposes to sell the vendors interest for forty-two thousand five hundred dollars flat, upon what principle can the decree be upheld ? If the decree be affirmed requiring this sum to be paid might not an obligation be imposed upon the appellants which they never assumed ? Can it be said that the acceptance, worded as it is, excludes the possibility of there being any conditions in the offer which have not been complied with ? It was incumbent on the plaintiffs to show on the face of the bill a definite and certain contract. They show the acceptance of an offer at a named price, without showing what the offer contains. As both offer and acceptance taken together compose the contract the plaintiffs have obviously not stated the contract at all, but have only set forth a part of it. It was not the duty of the defendants to show that the contract

as relied on is *not* definite and certain, but it was obligatory on the plaintiffs to set forth the *whole* agreement composed of the offer and acceptance so that the Court might see whether, as an entirety, it is definite and certain and such as ought to be specifically enforced. Did the offer stipulate that the appellees would convey an unincumbered title? The acceptance does not show. If the decree directs a fee-simple estate to be conveyed free of liens when the offer contemplated a different estate or one subject to liens, precisely what the parties did not contract to do would be decreed to be done. It is no answer to say that no such questions arise in the case at bar. We are dealing with the sufficiency of the contract as set out. The possibility that such questions could arise under the agreement *as set out* is sufficient to indicate that there is not that certainty in its terms which free it from every shade or color of ambiguity. As the bill does not state what the *offer* contained it does not in fact disclose what the contract of sale was; and in legal effect the plaintiffs ask not for the specific enforcement of a disclosed contract, but for the enforcement of the acceptance of an undisclosed *offer*.

It may be true when the offer and acceptance are brought together that a definite and certain agreement will be evidenced, but that is not the situation confronting us, because there is but *part* of the agreement relied on in the bill. That which is declared by the third paragraph of the bill and by the exhibit to be the agreement between the parties is manifestly vague and uncertain, and it is *that* agreement, and not some undivulged one, which the bill seeks to enforce.

If the contract relied on is lacking in mutuality it cannot be enforced. Wherever, as a general proposition, the contract is from any cause incapable of being enforced against one party, that party will not be permitted to enforce it against the other. Both parties must have a right to compel a specific performance at the date of the decree, or neither will have it. *Welty* v. *Jacobs*, 171 Ill. 624; *s. c.* 40 L. R. A. 98. Agreements upon a condition and options are within the rule, but when the condition has been performed or the option has been closed

the right of the respective parties to demand specific perform-
ance becomes mutual.    When there is an inequality of obli-
gation it is proper to refuse a specific performance and the
plaintiff should be left to seek compensation at law.    *Miller's
Eq. Pro.*, sec. 685 and cases in note.    *Tyson* v. *Watts*, 1 Md.
Ch. Dec. 17.    "A party not bound by the agreement itself,
has no right to call upon the judicial authority to enforce per-
formance against the other contracting party by expressing
his willingness to perform his part of the agreement.    His
right to the aid of the Court does not depend upon his sub-
sequent offer to perform the contract on his part when events
may have rendered it advantageous to do so, but upon its orig-
inally obligatory character."    *Duvall* v. *Myers*, 2 Md. Ch.
Dec. 405; *King* v. *Warfield*, 67 Md. 249-250.    Remembering
that we are dealing only with the agreement embodied in the
acceptance because that is the only agreement relied on in the
bill; and bearing in mind that we are still considering the de-
murrer, what possible right would the appellants, the pur-
chasers, have, under that acceptance, to compel the appellees,
the vendors, to convey the property?    Where in that accept-
ance is there any obligation or stipulation upon the part of
the vendors binding them to convey the property or indica-
ting what title or estate they should convey?    Could the pur-
chasers without having recourse to the offer, and without set-
ting forth the offer as part of the agreement, but relying solely
on the acceptance, compel the vendors to make a conveyance?
There can be but one answer to this question, and that an-
swer must be in the negative.    If, then, this be so, how can
the party *not* bound procure from a Court of equity a decree
requiring the other party to perform?    The want of mutuality
in the contract, as that contract is relied on, presents an insu-
perable bar to its being specifically enforced.    This defect of
the want of mutuality may, however, be remedied by appro-
priate amendment if the offer to sell and the acceptance when
taken together make a definite and mutually binding agree-
ment.

The second proposition to be considered arises on the ex-

ceptions to the answer.   It is undoubtedly true that an exec-
utory contract for the sale of land cannot be partly in writing
and partly in parol; and it is equally true that a written con-
tract cannot be added to by a verbal agreement.   We do not
understand the object intended to be accomplished by the
averments of the answer to be an attempt to supplemement a
written contract by a verbal one; but the allegations which
were expunged were designed to show extrinsic facts con-
nected with the making of the contract.   The existence of those
facts, whilst not varying the written contract, might furnish a
valid reason for a Court of equity refusing to specifically en-
force the agreement.   The doctrine which lies at the root of
this defense has been stated with great clearness by VICE-
CHANCELLOR EMERY, of New Jersey.   The learned Vice-
Chancellor said: "A purchaser, in resisting a claim for specific
performance of the contract, is entitled to show, by parol evi-
dence or otherwise, circumstances making it unconscionable or
unjust to grant this relief, which is purely equitable, and which
entitles him to insist that the vendor must be left to his remedy
at law on the contract."   *N. Y. Life Ins. Co.* v. *Gilhooly*, 47
Atl. Rep. 494.   It may well be that there is a binding con-
tract, but if it has been entered into under conditions not af-
fecting its validity though of such a character as to indicate
that it would be inequitable to specifically enforce it, a case
would be made where a Court of equity would not only be
justified in leaving the complaining party to his remedy at law,
but where a proper exercise of the admitted discretion, with
which the Court is clothed in such cases, would be rightly ex-
erted by denying the specific relief sought under the bill.
This means "not that the Court may arbitrarily or capriciously
perform one contract and refuse to perform another; but that
the Court has regard to the conduct of the plaintiff and *to
circumstances outside the contract itself*, and that the mere fact
of the existence of a valid contract is not conclusive in the
plaintiff's favor."   *Bamberger* v. *Johnson*, 86 Md. 41.

Now, if it be true that there were unadjusted matters pend-
ing between the appellee, William Dixon, and the appellants,

and growing out of the partnership referred to and connected with the settlement of the estate of Messrs. Dixon's father as alleged in the answer; and if, in fact, these matters were to be considered and brought to a final arrangement before the consummation of the sale, so that if any funds from these sources were due to the appellants, those funds could be used in paying the purchase price; it would, upon the plainest principles of justice, be inequitable to require the contract of purchase to be performed until these precedent conditions had been complied with. There is a broad difference between an attempt to vary by parol the terms of a written contract, and an effort to prove by parol the existence of extrinsic circumstances which, if true, would cause a Court to hesitate in ordering that contract to be performed. If the contract of sale was concluded in consequence of an understanding such as is set out in the answer, it would be manifestly inequitable to require the purchaser to comply until the conditions have been performed. The appellants should have been permitted to present evidence in support of the averments of their answer, not for the purpose of varying the contract but with a view of showing " circumstances outside the contract itself," so that the Court might see whether, regard being had to the surroundings, it would be just to grant the relief sought by the bill. If this be so, there was error in striking out those paragraphs of the answer to which exceptions were filed.

It follows, from the views we have expressed, that the decree appealed from ought not to have been passed. It will accordingly be reversed and the cause will be remanded for further proceedings.

*Decree reversed with costs above and below, and cause remanded.*

(Decided January 18th, 1901.)