HOWARD M. PHILLIPS AND AMY G. PHILLIPS

*vs.*

ALBERT C. CROWNFIELD.

*Partnership agreements: fraud; insufficient evidence; special*
*advantages to one or more parties; right to buy out others;*
*appraisement; rights of possession; dissolution;*
*absence of confidence.*

A partnership agreement was attacked on the ground of
fraud, and the charges *held,* not proved.               p. 450

No rule of law prevents parties to a partnership from agree-
ing among themselves that one of them have an advantage or
interest over the others.                                p. 450

A provision in a partnership agreement, that so long as the
relations continued the partners should share equally in the
losses, as well as the profits, but that in case of a disagreement,
a settlement should be made in a particular manner, giving to
one of the parties the prior right to purchase the assets, after
an inventory and appraisement, is not of itself any evidence of
fraud.                                                   p. 450

But such an agreement does not authorize one partner arbi-
trarily to oust the other parties, and take exclusive possession of
the property, without any appraisement or inventory.
                                                    pp. 451-452

In such a case, if the partner with the right to the prior
option should intentionally provoke a disagreement in order to
exercise his option, equity could intervene.             p. 451

Where such an agreement does not provide how or by whom the inventory and appraisement of the stock is to be made, in case of dissolution, the presumption is that it is to be made by the partners.                                      p. 452

In general, without special agreement, no one partner is entitled to the possession and control of the partnership assets to the exclusion of the others.                          p. 452

The basis of the partnership relation is the mutual confidence of the parties; if that element is lacking, or is destroyed, the ends and aims of the partnership are defeated.          p. 451

*Decided January 12th, 1915.*

Appeal from Circuit Court No. 2 of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*Joshua Horner, Jr.,* and *Isaac Lobe Straus,* for the appellants.

*George Moore Brady,* (with whom was Wm. Milnes Maloy on the brief) for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

Upon a bill filed by the appellants, the Court below granted a preliminary injunction. After hearing was had upon the bill, answer and testimony, the Court passed an order, dissolving the injunction and dismissing the bill. From that decree, this appeal was taken.

From the bill, it appears, in substance, that the appellants, who are husband and wife, on the one part, and the appellee, on the other part, entered into a covenant of partnership for the purpose of purchasing and selling confectionery, soda water and similar merchandise in a storeroom, to be called "The Lyric," in the City of Baltimore. That the articles of partnership provided that both parties should each contribute three hundred dollars to the capital; that the profits should be equally divided and the losses borne one-half by the appellants jointly, and one-half by the appellee; that all funds of the partnership should be deposited to the credit of the partnership and withdrawn only on checks signed jointly by the appellant Howard M. Phillips and the appellee; that the appellants should devote their entire time and energy to the conduct of the business; that the appellant, Amy G. Phillips, should receive the sum of eight dollars a week for her services, but that the appellant Howard M. Phillips should not receive any compensation for his services other than his share of the profits. The provision about which the present controversy arises, is set out in full, as follows:

"It is understood and agreed between the parties hereto that, in the event of a disagreement, the party of the first part, or his personal representatives, shall have the first right to purchase the business, at the appraised value ascertained by an inventory of the stock, and a calculation of the liabilities of the partnership, together with the sum of Two Hundred Dollars ($200) as a consideration for the equity in the lease on the store at the northeast corner of Charles and Preston streets, and in the event that the party of the first part, or his personal representatives, shall not exercise said right to purchase within thirty days after written notice shall have been given to him of the disagreement and intention to dissolve, then the parties of the second part, or their personal representatives, shall have the right to purchase said business at the value as ascertained, as above stated."

It is alleged that the appellee did not contribute his three hundred dollars until some time after the articles had been signed, although the appellants furnished theirs the day of the signing.

It is further alleged that the appellee and Howard M. Phillips disagreed about a matter entirely independent of the partnership business, and it is charged that the appellee intentionally provoked such disagreement, in order to have a pretext for dissolving and terminating the partnerhip; and further alleged that they, the appellants, had done all in their power to maintain amicable relations with the appellee.

It is further alleged that the appellee, after the said disagreement, wrote the appellants that he intended taking over the property, in conformity with the provision of the agreement quoted above; that a few days thereafter, he again wrote the appellants to the same effect and the further effect that he was willing to have the partnership business and assets transferred to a corporation to be formed for the purpose, fifty-one per cent. of the capital of which should be owned by him and the balance by the appellant, Amy G. Phillips. The appellants informed the appellee that they would not assent to a dissolution of the partnership, nor to any change in the covenant of partnership, nor to any transfer of the business or assets.

Thereupon, it is alleged that, shortly afterwards, the appellee entered the store, during the absence of the appellants, and took exclusive possession, locking and keeping out the appellants, and continued to do so.

The relief prayed for and granted was, that the appellee be restrained from preventing the appellants from entering the premises and from performing all the duties with respect to the business which they were entitled to perform under the agreement; and from attempting to require or force the apellants to sell or otherwise transfer to him their interest in the business, by virtue of the fictitious disagreement set up by him; and also from taking exclusive possession of the bank books and funds of the business.

Upon the motion to dissolve, a great volume of testimony was taken, a large portion of which, the record justifies us in saying, was irrelevant and trivial.

The contention of the appellants is, that the provision in the articles of partnership providing for the purchase of the business in the event of a disagreement, is void or voidable, because it was procured by the fraud of the appellee practised upon the appellants. That if it should be deemed that this provision is valid, no disagreement within the purview of the clause has occurred, and that, therefore, no ground exists for the exercise of the option by the appellee.

It needs no citation of authority to establish the position that, if the appellants were induced to enter into the contract by the fraud of the appellee, then the contract is not binding. Indeed, the appellee concedes this to be the law, but maintains that the facts show an entire absence of fraud. It will therefore be necessary to briefly review the testimony to determine the correctness or incorrectness of these questions.

The appellee had long been in the wholesale confectionery business, and the appellant, Howard M. Phillips, had for several years been employed by him as a salesman. The appellee decided to embark in the retail business in connection with his wholesale business. With this end in view, in looking about for a suitable location, he attempted to lease the storeroom in the basement of the property at the corner of Charles and Preston streets, Baltimore. Because of some legal complications, he was unable at once to secure a valid lease, but secured a promise, from the agent for the property, that as soon as a valid lease could be executed, he should have the first right to a lease. Later the agent notified him the lease could be effected. In the meantime, the appellee had opened a store, similar to the kind he contemplated for the Charles street rooms, in the Equitable Building, and hesitated over taking the lease. However, after several interviews between the agent for the property, the appellee and the appellant, Howard M. Phillips, the storeroom was leased; the appellee and Howard M. Phillips signing the

lease, and the articles of partnership were drawn up, and are as set out in the bill, and as recited above. Before the parties signed, Mrs. Phillips testified that, she "did not understand the meaning of the clause about $200. I may not express myself now just what it read. And he whispered on the side, that meant to protect him if Mr. Phillips should pick up and go away again, and that he and I should continue the business as partners." That constitutes the fraud relied upon by the appellants which induced them to enter into the contract. We will revert to that later on however. That part of the agreement relating to both of the Phillips devoting all of their time to the conduct of the business was changed so that it only applied to Mrs. Phillips, and Mr. Phillips was continued on as a salesman in the wholesale business of the appellee. It was also agreed that all of the confectionery should be procured through the appellee's wholesale business; the price agreed, being factory prices plus freight plus ten per cent. It was also necessary to employ a saleswoman, and it was agreed that three dollars of her wages should be paid by the appellee individually, and the balance, four dollars, by the business. The agreement was signed by all the parties on the 6th day of October, 1913, and the three hundred dollars of the Phillips paid over to the appellee at that time. The store was opened for business on the 8th of November, 1913, and the appellee's three hundred dollars were not deposited until the 14th of the same month. In the meantime, the partnership had become indebted to the appellee's wholesale business for supplies. There is no claim made that the appellee did not put in his share of the capital, but only that he was dilatory in doing so.

The retail store was a success almost from the beginning. And also from the beginning, friction developed between Mr. Phillips and the appellee. The trouble was caused by complaints made by Phillips that overcharges were made by the appellee for goods furnished in some instances, and in other, that goods ordered had not been delivered but still were charged for. These complaints were made in the Equitable

Building store of the appellee. And, if we consider only the testimony of Phillips, were so frequent and made in such a manner as questioned the honesty of the appellee. From our reading of the record, we have been able to discover nothing from which anything could be inferred, but the usual and ordinary mistakes to be expected in a business of necessarily small details. All claims were promptly adjusted when shown to the appellee. In the early part of January, 1914, the appellant, Howard M. Phillips, voluntarily left the employ of the appellee after some dispute growing out of a transaction in the wholesale business. A few days later, he re-entered the employ of the appellee, but on a commission basis instead of a weekly salary. On the second week's work, when the commissions did not amount to as much as his salary would have, the final break occurred; during which, among other things, the appellee was called, "the commonest cur in Baltimore." This, of course, terminated their relations as employer and employee. Afterwards, January 21st, and February 4th, followed the letters heretofore referred to. The appellants refused to assist the appelllee in an inventory, so the appellee had one made himself, and afterwards, when Mrs. Phillips was away from the store for lunch, entered the store and refused to allow the appellants to enter.

The appellee testified that he attempted to find Mr. Phillips, so as to tender a certified check for the amount of the inventory and the amount agreed upon for the equity for the lease, but that he could not find them together before the injunction was laid.

The appellants have cited a number of authorities, dealing with the question of fraud, about which there can be no doubt raised as to their correctness in a proper case; but they have no application in the present case, for the facts do not measure up, in our opinion, so as to establish a case of fraudulent action on the part of the appellee. We have been unable from a close and careful reading to arrive at a conclusion that any fraud was exercised by the appellee to induce the appellants to enter into the contract. The only act urged by

the appellants as establishing that condition, arises from the conversation between Mrs. Phillips and the appellee, before referred to. The clause in the agreement states, in clear and unmistakable language, that it is providing for a dissolution of the business, in the event of a disagreement of the parties. Mrs. Phillips testifies that she did not understand the meaning of the provision for two hundred dollars. This very naturally could not be known to a person not versed in business. But it was that part that she says was not understood by her, and not the main object of the clause, to wit, in the event of a disagreement, the appellee should have the first right to purchase. And in response to her inquiry as to the meaning of the $200 portion, the appellee volunteered that if Mr. Phillips went off again (as he had before, for a period of several months), they would continue as partners. The record shows that the appellee made every effort, both verbally and in the letters referred to, to continue the business, either as a corporation or a partnership with Mrs. Phillips, on the one condition, that Mr. Phillips should be excluded. We are, therefore, of the opinion there was not fraudulent inducement on the part of the appellee so as to enable the appellants to escape the binding effect of what they had in writing agreed to.

It is suggested by the appellants that, by giving the appellee the first right to purchase, the equality of the partnership is destroyed and that the appellee gains an advantage. We know of no rule of law which prevents parties to a partnership from agreeing among themselves that some of the partners may have an advantage or interest over the others. In this agreement, the provision was that so long as the partnership continued, the partners should share the profits or losses equally, but that when it was at an end, a settlement should be made in a particular way and the business continued, if either party desired to do so.

We are also of the opinion that such a disagreement has arisen between the parties, as was contemplated by the covenant of partnership. It is true, that the final disagreement

came about over a matter connected, not with the partnership business, but with the wholesale business, but from a reading of the testimony, the fact is brought strongly home that this was merely the climax of a continuing series of more or less petty quarrels from the inception of the partnership. We do not mean that Mr. Phillips should not have called attention to errors made in the accounts, between the partnership and wholesale business, but we have been impressed with the spirit in which the charges were made and have wondered that the final break was deferred as long as it was. The very basis for a partnership is the mutual confidence reposed by the partners in each other. When that element is lacking or destroyed, the very purposes, ends and aims of a partnership are defeated.

We have also sufficiently indicated our opinion as to the correctness of the allegation in the bill, that the disagreement was intentionally provoked by the appellee in order to exercise his option. There is nothing whatever in the record to warrant such an intimation. We have considered this phase very carefully, for if such a condition existed, it would show such a want of good faith, that a Court of Equity should not hesitate to intervene.

Although, we are of the opinion that the appellee after the disagreement, was, under the disagreement clause, entitled to exercise the option of purchase, we, nevertheless, must find that he exceeded his rights, when he attempted to and did take exclusive possession of the store after ousting the appellants. The agreement provided in terms, that the appellee "shall have the first right to purchase the business, at the appraised value ascertained by an inventory of the stock." There is no method provided as to how and by whom the inventory and appraisement is to be made, but, of course, the presumption is that it is to be made by the parties to the contract. If the parties could not agree upon a proper inventory and appraisement, they would have to agree upon appraisers or resort to the proper legal procedure for the ascertainment of an amount; for, in the absence of a binding

appraisement, the purchaser could not be allowed to take the property over the protest of his co-partners. In this case, the appellee endeavored to have the appellants join him in the work of the appraisement, but when they refused, he did not thereby gain the right to have one made, which would bind the appellants. He was in no better position than if the appellants had consented to assist and then there had been a disagreement between them as to the proper amount. It is a fundamental principle that no partner is entitled to the possession and control of the partnership asset to the exclusion of the other partners, in the absence of an express agreement to that effect. Under the terms of the agreement in this case, Mrs. Phillips was in charge of the store, assisted by Mr. Phillips,and, although the appellants had the right to purchase when the inventory and appraisement had been properly ascertained, he had no right to bar them from participation in the business, until the amount had been properly ascertained and paid or tendered.

We will have, therefore, to reverse the rulings of the lower Court and remand the proceedings in order that the injunction may be continued, restraining the appellee from preventing the appellants entering the premises and performing their duties therein, and from taking exclusive possession of the bank books and funds of the business, until such time as the rights of the appellee can be enforced by proper legal procedure.

*Decree reversed and cause remanded, with costs to the appellants.*