BORGERDING, APPELLEE, *v.* GINOCCHIO, EXR., APPELLANT.

232

(No. 6115—Decided May 4, 1942.)

*Mr. Anthony B. Dunlap,* for appellee.
*Messrs. Ginocchio & Ginocchio,* for appellant.

MATTHEWS, P. J. The petition in this case was in the short form, authorized by Section 11334, General Code, upon a written instrument of which the following is a copy:

"Oct. 18, 1937.

"I the undersigned Chas. J. Case do hereby promise to pay to Miss Catherine Borgerding the sum of one thousand ($1000) dollars, first payment Oct. 18th— $50.

"Paid on Oct. 18th, 1937
"Paid on Nov. 15th, 1937 50.00.

"Chas. J. Case."

The answer admitted the representative capacity of the defendant and alleged as defenses the statute of limitations and a general denial. There was also the affirmative allegation that there was no consideration for the promise sued on.

The issues of fact were submitted to a jury which returned a verdict for the plaintiff and answered two special interrogatories, and the court, after overruling the defendant's motion for a new trial, entered judgment on the verdict.

This appeal is from that judgment.

There is no question that the plaintiff duly presented her claim to the defendant and that he rejected it and that this action was filed within the time required by law. While that issue was raised by the pleadings, it is not necessary for us to consider it on this review.

The issues argued here relate to whether there is any or sufficient evidence of the execution of this written instrument by the decedent and consideration to support it, and if there was sufficient evidence, whether there was error in the general charge and refusal to give a special charge requested by the defendant.

Only two witnesses testified. One was the former bookkeeper of the decedent. She testified that the note was in her handwriting and as to the circumstances of its preparation she said:

"Q. Will you tell us what he said to you on that day on which he asked you to write that paper; what did he say to you about it? What instructions did he give you? A. He says 'Take a note, write this down' and I wrote down just exactly word for word as he gave it to me as it is written on this note and he went on to say that Kate had always been good to him and that she assisted in doing the housework all the years she lived with them and due to the fact that the money was Mamie Case's he feels as though he wants to give her the thousand dollars."

On cross-examination she said that the decedent had told her it had been his deceased wife's wish that he give this money to the plaintiff and that she had so

testified on a former trial of this case. The plaintiff was the sister of the decedent's first wife who had died about one week before this incident. The witness also testified that the decedent took the note and she did not know what he did with it. She did not see him sign it or testify that the signature was in his handwriting.

The court admitted the writing in evidence on this witness' testimony.

The plaintiff was the other witness. She took the stand in her own behalf and testified to events after the death of the decedent. After the court had overruled the defendant's motion for an instructed verdict, the defendant called the plaintiff for cross-examination, and thereby waived the bar to her testifying imposed by Section 11495, General Code. 42 Ohio Jurisprudence, 167, Section 160. She then testified that she had lived for 25 years in the home of the decedent and his wife, who was her sister, and had paid $5 per week for her board, and that she sometimes helped her sister with the housework. She also said that the decedent accosted her on a public street, about two weeks after her sister's death, handed her this note and told her " 'Put that in your pocket Katy' or in my bag,'' and at no time did he tell her why he gave her the note. She also said that after her sister's death, the decedent told her that "we will just stay on here and keep house,'' and arranged to and did pay her $50 per month for several months, to be used by her to pay the expenses of the housekeeping and that she so used it.

(1) Now it is manifest that there is no evidence that the signature to this note is in the handwriting of the decedent or that he ever signed it. There is evidence that he handed it to the plaintiff and told her to keep it and that is all. However, we do not think that

this failure to prove that the name is in the handwriting of the decedent is important—certainly not vital at this stage of the case. It might have been important at an earlier stage in determining the method of pleading the cause of action.

This is a controversy between the original parties to a non-negotiable contract. The law requires no specific kind of proof. It may be proved entirely by a written memorial, or entirely by an oral promise, or in the absense of a family relationship, by circumstantial evidence without any express promise either written or oral. That being true, the delivery of a written promise either signed or unsigned would have probative force depending upon the circumstances. The circumstances would determine whether it was intended to express the terms of a contractual relation between the parties.

So we hold that the writing was properly received in evidence and that under the circumstances it tended to prove a promise on the part of the decedent.

(2) The final question is whether there is any evidence that this promise is supported by a consideration. That a consideration is necessary in order to attach to it a binding obligation is conceded. But it is said that the writing imports a consideration and *Dugan* v. *Campbell,* 1 Ohio, 115, is chiefly relied upon in support of that proposition. The writing sued upon in that case was in these words:

"Four months after date I promise to pay John S. Dugan or order seventy-five dollars for value received, payable in the currency of this place, if the said Dugan does not take it out in store goods at the same rate. Zanesville, August 17, 1820."

While the court was concerned principally with the method of pleading and whether the writing evidenced a promise to pay money only, the court did say:

"It is not necessary to decide whether the note in this case is or is not negotiable, or to adopt or reject the principles of the cases cited on either side; for if it were not negotiable within the rules of decision, we should nevertheless consider it a promissory note, importing in itself a consideration.

"From the first settlement of the state, it has been a universal practice among all classes of citizens, in making contracts, for the party who has received a consideration, according to the terms of agreement, to execute a written promise to pay a sum of money or other property for value received."

It will be observed that there was an express recital of "value received" in the writing and that the court mentioned that fact. There is no such recital in the writing in the case at bar.

In 1 Restatement of Contracts, 93, Section 82, Comment *b*, it is said:

"A recital that a stated consideration has been given is in every case admissible evidence of the fact though not generally conclusive."

And in 1 Williston on Contracts (Rev. Ed.), 403, Section 115B, the author says:

"A statement in a written contract of an existing fact, as that something other than a promise has been received as consideration, though not conclusive, is, however, *prima facie* evidence of that fact."

See, also, 9 Ohio Jurisprudence, 323 *et seq.,* Section 100.

We find *Dugan* v. *Campbell* cited many times as an authority on the other points decided, but we find no case in which it is cited as an authority for the proposition that in an action on a non-negotiable promissory note, the writing imports consideration. Such

an interpretation would place it in conflict with the uniform tenor of modern decisions. 1 Williston on Contracts (Rev. Ed.), 368, Section 107, and 12 American Jurisprudence, 566, Section 73.

Now adverting to the testimony, we find that the transaction in which this written promise was delivered to the plaintiff was described by the decedent at the time as a gift. At no place in the plaintiff's testimony did she say anything from which an inference could be drawn that the parties had in mind any detriment to her or benefit to the decedent to counterbalance the promise in the estimation of the parties, and give binding obligation to it.

It is urged that the evidence shows services performed and a promise to perform services in the future and perhaps a loan of a small sum ($50) twenty years previously, and that this furnished the consideration.

There is no evidence that the services performed, if any, were performed under such circumstances as to import an expectation of compensation, or that any promise had anything to do with compensation for services to be rendered. The evidence fails to show a promise, express or implied, anterior to this written promise, binding the decedent to pay for services rendered. Therefore, even assuming that the parties had attempted to make that the consideration, it would not have availed. A benefit intended as a gift at the time cannot be transformed thereafter into a contractual relation.

Finally, consideration for a contract can only be that which the parties intended to be the consideration. It must be that which was "bargained for and given in exchange for the promise." 1 Restatement of Contracts, 80, Section 75.

In 12 American Jurisprudence, 568, Section 75, the rule is expressed thus:

"Nothing is consideration for a contract that is not regarded as such by both parties. The mere presence of some incident to a contract which might under certain circumstances be upheld as a consideration for a promise does not necessarily make it the consideration for the promise in that contract. To give it that effect, it must have been offered by one party and accepted by the other as an element of the contract. Accordingly, the fortuitous presence in a transaction of some possibility of detriment, latent but unthought of, is not enough to furnish a consideration for a contract. The promisor and promisee must have dealt with it as the inducement to the promise."

For these reasons, we have reached the conclusion that the court erred in overruling the defendant's motions for an instructed verdict. This conclusion renders it unnecessary to consider the other errors assigned.

The judgment is reversed and the cause remanded with instruction to render final judgment for the defendant.

*Judgment reversed and cause remanded.*

Ross, J., concurs.