MOSE COHEN & SONS, INC., Plaintiff, v. KUHR et, Defendants.

Common Pleas Court, Hamilton County.

No. A-159694. Decided August 20, 1959.

*Messrs. Gorman, Davis & Hengelbrok* and *Mr. Jerome A. Lischkoff,* for plaintiff.

*Mr. C. R. Beirne,* for defendants.

RENNER, J.· Plaintiff in this action asks the Court to declare the rights, duties and obligations of the plaintiff and the defendants under a contract entered into between them on February 11, 1955, and to enjoin the defendants from baling sheet iron purchased by them or offering it to others before first offering it for sale to the plaintiff which they claim is required by the agreement and for all other legal and equitable relief to which the plaintiff is entitled.

The agreement of February 11, 1955, reads as follows:

"KNOW ALL MEN BY THESE PRESENTS:

"That Alvin I. Kuhr and Al Kuhr Iron and Metal, Inc., in consideration of $1.00 paid to him and it by Mose Cohen & Sons, Inc., the receipt of which is hereby acknowledged, and in further consideration (in addition to the cash consideration of $11,000.00) for the conveyance this day by the said Mose Cohen & Sons, Inc. of certain real estate located on Ramsey Street, Cincinnati, Ohio, to Alvin I. Kuhr, do hereby grant unto the said Mose Cohen & Sons, Inc. the following rights and options for a period of 5 years from the date hereof, under the following terms and conditions:

"1. Said Alvin I. Kuhr and/or Al Kuhr Iron and Metal, Inc. agree to grant to Mose Cohen & Sons, Inc. the first right to purchase from him and it any or all sheet iron which has been purchased by him or it at the fair market value of said materials then prevailing in the Cincinnati market.

"2. The 'fair market value' shall be considered to be that price offered for the particular kind and type of sheet iron by other sheet iron balers in Cincinnati at the time of said offer.

"3. Should Mose Cohen & Sons, Inc. decline to purchase any particular offering of sheet iron by the said Alvin I. Kuhr

and/or Al Kuhr Iron and Metal, Inc. then he and/or it shall have the right to sell said particular offering of sheet iron to anyone else he and/or it so desires. He and/or it shall, however, be obligated to offer for sale all succeeding purchases of sheet iron purchased by him and/or it to Mose Cohen & Sons, Inc., which may be purchased or refused in whole or in part by Mose Cohen & Sons, Inc. in the same manner. All customary trade practices shall apply in the aforementioned sales, including rejections and regrading for contaminated sheet iron or other foreign materials.

"4. Said Mose Cohen & Sons, Inc. shall have the right to inspect the sales memoranda of Alvin I Kuhr and/or Al Kuhr Iron and Metal, Inc. to determine the price received by said Alvin I. Kuhr and/or Al Kuhr Iron and Metal, Inc. for any particular sheet iron offered to Mose Cohen & Sons, Inc., but refused by said Mose Cohen & Sons, Inc.

"5. The price quoted to be paid by Mose Cohen & Sons, Inc., shall be upon either of the following terms, at the option of Mose Cohen & Sons, Inc.:

"(a) F. O. B. trailer Kuhr yards.

"(b) Delivered Mose Cohen & Sons, Inc. yards, to be delivered by Kuhr at the convenience of Mose Cohen & Sons, Inc.

"It is mutually agreed between the parties hereto that all rights and obligations under this agreement shall inure to and be binding upon the heirs, executors, administrators, successors and assigns of all parties hereto.

"IN WITNESS WHEREOF, said Alvin I. Kuhr, Al Kuhr Iron and Metal, Inc., an Ohio corporation, and Mose Cohen & Sons, Inc., an Ohio corporation, have hereunto set their hands this 11th day of February, 1955.

/s/ Alvin I Kuhr

AL KUHR IRON AND METAL, INC.
By /s/ Alvin I. Kuhr, Pres.

MOSE COHEN & SONS, INC.
By /s/ Harvey D. Cohen, Sec."

The restrictive covenant contained in the deed from plaintiff to Alvin I. Kuhr also dated February 11, 1955, and which

conveyance is mentioned as a part of the consideration for the agreement provides as follows:

"And as a further consideration for this conveyance, the said Alvin I. Kuhr does hereby covenant with the said grantor, Mose Cohen and Sons, Ins., its successors and assigns, that neither he nor his respective heirs, successors, administrators, executors, assigns, tenants and sub-tenants, will, for a period of 15 years from the date of this deed, engage in scrap sheet iron baling or compression operations of any kind, or any operations connected therewith, upon the real estate herein conveyed, it being intended hereby to prohibit the said Alvin I. Kuhr, his respective heirs, executors, administrators, successors, assigns, tenants and sub-tenants for a period of 15 years from the date of this deed, from engaging in scrap sheet iron baling or compression operations of any kind, or any operations connected therewith, on the real estate herein conveyed."

The above agreement and deed are both in evidence.

Plaintiff's amended petition alleges that the foregoing agreement provides that all unbaled sheet iron, and not compressed or baled sheet iron, must be offered by the defendants to the plaintiff before defendants may dispose of it and they say that the defendants have disagreed with the plaintiff on the construction of the terms of said agreement and that since April 30, 1957, defendants have failed and refused to offer to plaintiff unbaled sheet iron in accordance with the agreement.

The amended petition further recites that by reason of this alleged breach of contract by the defendants it has and will suffer irreparable damages and loss if defendants continue to violate the agreement and that it has no adequate remedy at law.

The defendant, Alvin I. Kuhr, filed an answer admitting that he is the President of the defendant corporation and that the plaintiff conveyed to him by Warranty Deed dated February 11, 1955, lot No. 27 in Samuel Ramsey's sub-division and that he signed the alleged agreement above set forth and he denies every other allegation and petition. He further alleges that he has not individually engaged in the purchase or sale of sheet iron, baled or unbaled, and that he is not a proper party to the action and he prays to be dismissed as a party to the cause.

The defendant, Alvin I. Kuhr Iron and Metal, Inc. filed an amended answer to the amended petition in which it admits certain allegations which are contained in the amended petition, viz: that the plaintiff on or about February 11, 1955, conveyed certain premises to Alvin I. Kuhr by General Warranty deed; that on February 11, 1955, it signed a certain document which purported to give the plaintiff the first right to purchase sheet iron, which had been purchased by the defendant, at the fair market value prevailing in Cincinnati and that after February 11, 1955 it did give the plaintiff the first right to purchase sheet iron sold by it as set forth in the agreement.

The answer denies that the defendant corporation was to be in any manner restricted in the use of the premises owned by it in carrying out its business operations except only as provided in the restrictive covenant contained in the deed from the plaintiff to Alvin I. Kuhr relating to Lot No. 27 in Samuel Ramsey's subdivision. The answer also alleges that the agreement, above set forth, only purports to require the defendant to give the plaintiff the first right to purchase such sheet iron as the defendant would sell and further that such document was not a valid and binding contract for the reason that it lacked mutuality and was without consideration. The answer concludes with the denial of the other allegations and asks that the amended petition be dismissed and that it be granted a judgment against the plaintiff for its costs.

On July 1st, 1959, the plaintiff filed a reply to the amended answer. At the request of counsel for the plaintiff, the first paragraph of the reply was stricken by the Court, and the Court also granted defendants' motion to strike the fourth paragraph from the reply. What remains of the reply constitutes a general denial of the allegations in the amended answer except as to the first two paragraphs and the first sentence of the third paragraph of the answer.

The defendants original memorandum and their reply brief to plaintiff's memorandum includes all of the issues in the case. The Court will consider them in the order in which they appear in the defendants' original memorandum.

### I. THE DEED.

The Court determined during the trial, and ruled accord-

ingly, that the only bearing which the deed from the plaintiff to Alvin I. Kuhr could have on the issues in this case was as evidence of consideration passing from the plaintiffs to the defendants as recited in the agreement of February 11, 1955. The deed was admitted in evidence for that purpose and also because it was evidence of an act or circumstance at the time of the execution of the contract which may tend to show the intention of the parties.

## II. CONSTRUING THE TWO CONTRACTS.

The amended petition makes no reference to the above mentioned deed, other than to mention it as a consideration passing from the plaintiff to the defendants. The allegations of the petition are confined to the agreement and the relief asked for in the prayer is confined solely to the agreement.

The fact that the defendant corporation volunteered an admission in its amended answer that no baling operations were to be carried on the premises sold by plaintiff to Alvin I. Kuhr does not require the construction of both the deed and the contract as one agreement.

## III. MUTUALITY.

Counsel for defendants suggests that the agreement is binding only on the defendants and is, therefore, void and he cites a number of authorities to that effect.

If no consideration passed from the plaintiff to the defendants for the rights to purchase scrap iron from the defendant then counsel's reasoning would be well founded.

The agreement specifically recites that the conveyance of lot No. 27 by the plaintiff to the defendant Alvin I. Kuhr was a part of the consideration passing from the plaintiff to the defendant for the rights and options granted by the defendants to plaintiff.

"While it is said that the consideration expressed in a contract is presumed to be the full and entire consideration agreed upon, it is the rule that the recitals of a written instrument as to consideration are not conclusive, and it is competent to inquire into it and show by extrinsic evidence what the real consideration consists of. A statement in a written contract that something other than a promise has been received as consideration is prima facie evidence of that fact, though it is not conclusive." 11 Ohio Jurisprudence 2nd, p. 295, Sec. 57.

See also: 100 Ohio St., 416, *Lima* v. *Public Utilities*; 69 Ohio App., 231, 24 Ohio Opinions, 27, *Borgerding* v. *Ginocchio*.

In addition to the presumption raised by the recitation in the agreement there was ample extrinsic evidence of consideration for the rights and options granted to plaintiff by the defendants.

Lot No. 27 which the plaintiff had owned was adjacent to property of the defendant in which its business was conducted. The defendant Alvin I. Kuhr and his brother Alfred had, on a number of occasions, in the period of four to five years prior to February 11, 1955, discussed with William and Harvey Cohen the purchase of that lot. Alvin Kuhr testified that he was interested in acquiring the lot for additional space for storing the scrap materials. The lot was unimproved and was serviced by a railroad siding which adjoined it. The fact that Alvin Kuhr accepted the deed subject to the restrictions contained in it indicates the defendants' eagerness to acquire the property.

Alvin and Alfred Kuhr were experienced scrap iron dealers having been in that business for many years. Alfred Kuhr was also admitted to practice law in Ohio in 1947. The contract was read by them before it was signed and although Alfred M. Kuhr testified that he objected to the contract because it was not in accordance with their verbal understanding and he said further that he informed his brother Alvin that he objected to the terms of the contract, nevertheless he advised Alvin to sign the agreement.

*Fuchs* v. *The United Motor Stage Co., Inc.*, 135 Ohio St., 509, 14 Ohio Opinions, 399, furnishes ample authority to refute the claim of the defendants that the contract is void for want of consideration and lack of mutuality.

Syllabus 3 and 4 of the above case reads as follows:

"3. So long as there is consideration for the obligation of one party to purchase merchandise from another, it is not always essential that there be mutuality of obligation between them in order to give the seller a right of action against the purchaser for a breach of such obligation to purchase, and likewise under such circumstances, it is not always essential that there be mutuality of remedy as between the parties, to enable the seller to specifically enforce the obligation of the purchaser to purchase under such contract.

"4. The term adequate remedy at law as applied to a breach of contract means that the legal remedy must be as efficient as the indicated equitable remedy would be; that such legal remedy must be presently available in a single action; and that such remedy must be certain and complete, taking into consideration the specific advantages to which the party to whom performance is due is entitled by the terms of the contract."

## IV. THE CONTRACT IS INDEFINITE.

Counsel for defendant sets forth two reasons why the contract is invalid for uncertainty.

The first is that the definition of "fair market value" contemplates a particular or set price and that a definite or fixed price at which to offer the scrap metal cannot be determined.

Bouvier's Law Dictionary defines "market price" or "market value" as "a price established by public sales, or sales in the way of ordinary business, as of merchandise."

If counsel's reasoning is sound, the Courts throughout the United States would have to abandon the use of this long established method of determining the value of many commodities. It is obvious that this phrase does not connote one set price.

There was testimony in this case that the price which the scrap dealers pay to the scavengers and industries for scrap metals is determined by the price paid by the Steel Mills after it is processed into bundles. There was also testimony to the effect that in order to buy scrap iron and remain in business the dealer is required to meet the current prices being offered by other Cincinnati dealers. The fact that this price may fluctuate each day or each week does not mean that scrap iron and similarly stocks, bonds, grain, coffee and other commodities which are bought and sold do not have a fair market value. It must be presumed that the parties to the agreement who bought and sold scrap iron for many years, knew and accepted this term as a reasonable method of purchase and sale under the contract.

The second reason assigned is that the agreement is invalid because it is indefinite as to the quantity which the defendant was required to offer to the plaintiff. This contention is likewise without foundation. Under the contract the de-

fendants are required to first offer to plaintiff all of the scrap iron purchased by them after February 11, 1955, before selling it to others or before processing it into bales. The amount of scrap iron purchased by the defendants is readily ascertainable from their business records and it, therefore, meets the requirements as set forth in 11 Ohio Jurisprudence 2nd, p. 285, Sec. 43, cited by defendants.

## V. CONSTRUCTION OF THE INSTRUMENT.

Nothing in plaintiff's pleadings nor in the arguments presented by its counsel suggests that the purchase and operation of balers by the defendant corporation violates the terms of the contract. The prayer of the amended petition asks only that the defendants be enjoined from baling sheet iron purchased by them or offering it to others before first offering it for sale to the plaintiff and the contract does not prevent the defendants from owning or operating a baler. The question to be determined here is what is meant by "sheet iron" as that phrase is used in the contract; and when and under what circumstances the defendants may bale sheet iron or sell it to others.

Plaintiff claims that the phrase "sheet iron," as used in the contract, was intended by the parties to mean and does mean scrap sheet iron before it is processed into "bundles" and the defendants contend that it means either baled or unbaled sheet iron.

Harvey Cohen testified that in the scrap metal salvaging business sheet iron is referred to and is known as such until it is processed into bales after which it is identified and known only as "bundles No. 1." or "bundles No. 2" according to the type of scrap contained in the bales. This testimony was not refuted.

"A word having a technical legal sense will be so construed, unless a different intention is clearly expressed. So, too, a term or phrase which has a technical meaning in the business to which the contract relates will be interpreted according to that meaning, unless a contrary intention is expressed."

11 Ohio Jurisprudence 2nd, p. 386, Sec. 141. See also 33 Ohio App., 396, *National Bank* v. *Bennet*, Syl. par. 2; 26 O.

N. P. (NS) 103, *Henderson* v. *Insurance Co.*, at top of p. 106 of the opinion.

The Court concludes that the parties to the contract intended that "sheet iron" meant unprocessed or unbaled sheet iron.

The contract does not expressly state whether the plaintiffs are required to make the offer to buy or the defendants must offer to sell nor does it specifically provide when such sales must be made to the plaintiff.

The correspondence between the parties indicates that they understood that the defendants were to make the offer to plaintiff. In the third paragraph on page 6 of defendants memorandum counsel for defendant states that "There is no dispute that defendant did offer plaintiff baled sheet iron after April, 1957, etc." This admitted fact further suggests such understanding.

That the defendants were not required to offer to plaintiff sheet iron purchased by them, immediately after such lots were purchased and at the price they paid for it, is shown by the contract and other evidence.

Alvin Kuhr or his brother testified that while some of the profit was realized in the scrap metal business from the conversion of sheet iron into bales, the amount of profit or loss is controlled by the price at which the scrap is bought and sold in the market. The evidence further disclosed that sheet metal and bundles were stock piled and held at times to await a better sales market.

The Court, therefore, finds that it was the intention and understanding of the parties that under the terms of the contract the defendants were to offer to the plaintiffs all sheet iron and not bundles purchased by them at such times as the defendants elected to make the offer and that the prices at which the offers were to be made was the fair market value at the time of the offer, as defined in paragraph two of the agreement.

## VI. RESTRICTIONS.

The questions raised by counsel for defendants under this heading are answered earlier in this Opinion.

No evidence of violation of the terms of the agreement by Alvin I. Kuhr as an individual has been presented and he should, therefore, be dismissed as a defendant.

A judgment entry may be presented declaring the rights and obligations of the plaintiff and the defendant, Al Kuhr Iron & Metal, Inc., in accordance with this opinion, including the injunction prayed for and the dismissal of the defendant, Alvin I. Kuhr.