## ANSHE SEPHARD CONGREGATION *v.* ANNIE WEISBLATT.

[No. 7, April Term, 1936.]

*Decided May 19th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Israel S. Gomborov,* with whom were *A. David Gomborov* and *Estelle W. Gomborov* on the brief, for the appellant.

*Harry O. Levin,* for the appellee.

MITCHELL, J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit Court of Baltimore City, overruling a demurrer to a bill of complaint filed by the appellee, Annie Weisblatt, against the appellant, Anshe Sephard Congregation, seeking specific performance of an alleged agreement between the parties; based upon the single exhibit filed with the bill.

That exhibit is as follows:

"Chevra Kadisha Anshe Sephard Aisquith & Fayette Sts.

"Anshe Sephard Congregation, Aisquith & Fayette Sts.
"No. 127      Baltimore, Md., June 5, 1933.
"Mr. W. Svanner, Keeper

"Permit Mr.————————————

|  |  |
|---|---|
| | To dig Grave |
| | To put Tombstone |
| | Man |
| "For Corpse Weisblatt | Woman      Age—— |
| | Child |

"By order of Nathan Bagan
"Chairman of Cemetery

————————
Secretary.
"————————

Undertaker"

The bill alleges that the complainant is the widow of Rabbi M. N. Weisblatt, who died in the City of Baltimore some time during the month of May, 1932, having since 1912 officiated as the rabbi of the defendant congregation,

a Jewish synagogue, and that his remains were interred in a cemetery owned and maintained by the defendant, located at Rosedale. That subsequently the complainant, desiring to erect a mausoleum over the grave of her deceased husband, requested and obtained written permission from said congregation to do so, as evidenced by the aforegoing exhibit. That relying upon said alleged permission, the complainant made arrangements for the erection of a monument or mausoleum, but was thereafter notified by the defendant that it would not permit the complainant to proceed, and that, notwithstanding the complainant has made numerous demands upon the defendant to permit the erection of a mausoleum, said demands have been refused.

The prayer for relief is to the effect that a decree be passed requiring the defendant to permit the complainant to erect a mausoleum over the grave of her deceased husband, that the defendant be required to specifically comply with its agreement to permit the complainant to erect said mausoleum, and for general relief.

In view of the variance between the contention of the appellee and the phraseology of the permit upon which her contention is predicated, it might be well to set forth the respective definitions of the words "tombstone" and "mausoleum," before reviewing the law applicable to the facts in the instant case. In this connection *Funk & Wagnalls' New Standard Dictionary* defines a "tombstone" to be: "A stone marking a place of burial, and usually inscribed with a memorial of the deceased." The same authority defines a "mausoleum" to be: "A tomb of more than ordinary size or architectural pretentions, especially a grand monumental structure."

Giving full credence, therefore, to the force and effect of the exhibit relied upon by the appellee as authority for the erection of a mausoleum in the cemetery of the appellant, and waiving the inherent infirmities of the exhibit, in that it appears only to be a printed form, unauthenticated by the signature of any officer of the defendant congregation, silent as to whom the alleged au-

thority to erect a memorial of any kind is given, silent as to consideration for which it was given, and lacking any reference to the erection of a mausoleum as contradistinguished from a tombstone, does it warrant the relief sought?

Our answer to that query must be in the negative.

In *Story's Equity Jurisprudence* (2nd Ed.) sec. 1027, it is said: "The remedy of specific performance of a contract is not applied in any event as a matter of course. It is not always a right, but rests in the sound unbiased discretion of the Court. * * * The discretion with which the Chancellor is vested is a legal, and not arbitrary, discretion. He may only exercise his discretion and deny relief when the facts are doubtful, or the contract or some of its terms are so uncertain that injustice might arise." And in section 1053, the same authority, referring to written contracts, states: "If they are not certain in themselves, so as to enable the Court to arrive at the clear result of what all the terms are, they will not be specifically enforced. In the first place it would be inequitable to carry a contract into effect where the Court is left to ascertain the intentions of the parties by mere conjecture or guess; for it might be guilty of the error of decreeing precisely what the parties never did intend or contemplate." See *Liggett Co. v. Rose,* 152 Md. 146, 136 A. 651, *Diffenderffer v. Knoche,* 118 Md. 189, 84 A. 416; *Henneke v. Cooke,* 135 Md. 417, 109 A. 113.

In a word, the court will not pass a decree for specific performance in a doubtful case. *Miller's Equity Procedure,* sec. 658; *Penn v. McCullough,* 76 Md. 229, 230, 24 A. 424. Or, as stated in *Powell v. Moody,* 153 Md. 62, 137 A. 477, 478: "It is well settled in this state and elsewhere that, to maintain a bill for specific performance, it is requisite that the agreement which the court is asked to have performed must be fair, just, reasonable, bona fide, certain in all its parts, and made upon a good and valuable consideration. If any of these ingredients be wanting, equity will not decree a specific performance." Citing *Griffith v. Frederick County Bank,* 6 G. & J. 424; *Stod-*

*dert v. Bowie's Excr.,* 5 Md. 18, 35; *Gelston v. Sigmund,* 27 Md. 334, 343; *King v. Kaiser,* 126 Md. 213, 217, 94 A. 780.

It will be observed, therefore, from the authorities to which we have referred, that the contract sought to be enforced must be certain and definite in all its provisions, and fair and mutual in its terms, and must be so clearly proven as to satisfy the court that it constitutes the actual agreement between the parties.

Measured by that standard, we cannot conclude that these requirements have been met by the complainant in this case.

As heretofore indicated, there is no affirmative agreement between the parties to the cause shown by the exhibit filed in proof thereof. It is unauthenticated by the signature of any official of the defendant congregation, and clothes no one with authority to do, or abstain from doing, anything. Any interpretation of the exhibit which the court is asked to construe as a contract between the parties must be reached through imagination or conjecture. But even if the agreement was duly signed and the express authority to inter the body of the complainant's husband, and erect a tombstone, vested definitely in her, it would not follow that the word "tombstone" should be construed to mean "mausoleum."

The one form of memorial, as we have seen, is a single stone, whereas the other is a tomb of more than ordinary size or architectural pretentions.

For the purpose of conserving space and maintaining symmetry, nearly every well regulated cemetery company retains and exercises supervision and control over the erection of memorials placed within its confines. And in the absence of certainty as to the form of memorial contemplated by the exhibit before us (without regard to the inherent defects in said exhibit), we are unwilling to hazard a guess, or speculate, as to what may or may not have been contemplated. Finally, the court should refrain from granting the relief sought by the complainant, in view of the ambiguity of the exhibit, and the total absence of

mutuality of agreement between the parties to this cause. *Hearn v. Ruark,* 148 Md. 354, 129 A. 366; *Spear v. Orendorf,* 26 Md. 37; *Geiger v. Green,* 4 Gill, 472.

For the reasons stated, we are of the opinion that the demurrer should have been sustained, and accordingly the decree of the lower court will be reversed.

*Decree reversed, with costs to the appellant.*