JAMES A. HAGAN *v.* HARRY A. DUNDORE

[No. 52, January Term, 1945.]

*Decided June 28, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*Nathan Patz for the appellant.*

*Edward H. Burke* and *Daniel B. Leonard,* with whom were *Leonard Leipman,* and *Bowie & Burke* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Baltimore County overruling a demurrer to a bill of complaint filed therein.

The substantial allegations shown by the bill and exhibits filed on January 8, 1945, by the appellee, Harry A. Dundore, hereinafter referred to as the appellee, follow:

The appellee and the appellant, James A. Hagan, hereinafter referred to as the appellant, for some years past, had been partners trading as Diecraft Engraving Company. On May 18, 1944, they agreed that the partnership theretofore existing should be dissolved as of March 31, 1944, the appellant retiring from active participation in the operation of the business after March 31, 1944. The same parties on May 18, 1944, entered into a new written partnership agreement, being a partnership at will, to become effective as of April 1, 1944. An original

copy of the agreement executed by both parties and a balance sheet and statement of the partners' capital account as of March 31, 1944, were filed therewith. The appellee, in strict compliance with the terms of the new partnership agreement, has faithfully conducted the business of the concern, which is engaged in a highly confidential and specialized work connected with the war effort in the making of dies, precision tools, and other instruments.

Before April 1, 1944, the appellant gave part of his time to the partnership business, but certain events made it desirable for him to retire from any active participation in the business on March 31, 1944. Thereafter the appellee alone has conducted the business. No large capital is required but the success depends entirely on engineering ability and technical skill and labor. The appellant for the period from April 1, 1944, to December 31, 1944, was credited with his share of the profits in the amount of $58,249.50, and he withdrew during that same period $52,571.79. During that time he was not on the property, took no part in the operation of the business, and was free to engage in other business, even a competing one if he so desired. At the time of the filing of the bill of complaint the appellant's interest in the partnership was $42,885.23, subject to disputed claims of approximately $5,000.00 and to renegotiation liabilities. At that time the interest of the appellant in the capital and profits of the partnership business was 35 per cent. and that of appellee 65 per cent.

On December 29, 1944, the appellee received a letter, dated December 28th, from the appellant and his attorney by which the aforesaid partnership existing between the parties to this case was dissolved. This letter, filed as an exhibit, was the first intimation the appellee had that the appellant desired to dissolve the partnership. Upon receipt of this letter the appellee offered to purchase from the appellant his interest in the partnership for the sum of $41,154.52, which was agreed upon as the value of said interest. A meeting was held to consum-

mate this transaction and appellee was prepared to pay this sum in cash upon receipt of a deed and assignment of appellant's interest. The appellant, however, refused to consummate said transaction and through his attorney proposed to buy appellee's interest in the partnership.

Pursuant to Paragraph 9 of the partnership agreement, the appellee then sent by registered mail, return receipt requested, to the appellant, a letter dated January 4, 1945, in which appellee exercised the option given him to purchase all of the interest of the appellant in the partnership, including the real estate, for a sum not exceeding the book value of the share of appellant in the partnership. Paragraph 9 of the partnership agreement provides as follows: "The said Harry A. Dundore shall have the right and option to purchase from the said James A. Hagan at any time during the life of this partnership agreement, upon ten days notice in writing any portion or all of the interest of James A. Hagan, including his interest in fee simple property known as 1500 Guilford Ave., Baltimore, Md., for a sum not exceeding the book value of the share of the said James A. Hagan in said partnership. In the event the said Harry A. Dundore exercises his said option to purchase a part or parts of the interest of James A. Hagan, the sum or sums so paid by him to said James A. Hagan, shall be added to the capital investment of said Harry A. Dundore and deducted from the capital investment of said James A. Hagan; and from and after the date of said payment or payments by said Harry A. Dundore, the net profits shall be divided between the partners according to the ratio of their respective remaining capital interests to the capital of said business and in the same manner as provided in Paragraph 8 (a) and (b) above."

The appellant, by letter, denied the right of the appellee to exercise the option claimed under Paragraph 9 aforesaid.

The partnership has been conducted solely by the appelee since April 1, 1944, and prior thereto was operated by appellee, with but little, if any, assistance from the

appellant. The partnership business has been successful and highly remunerative. Neither the appellant nor any other person or group of persons is qualified to conduct the business. Should the appellant, either individually or through his appointee and representatives, participate in the liquidation of the business and the completion of orders the interest of the appellee will be adversely affected and irreparably damaged. The appellant or his representatives have a right to examine the books for the purpose of determining the book value of appellant's interest.

The appellee is willing to pay into Court the book value of appellant's interest and to file bond to protect appellant. Appellee is ready and willing to pay and has offered to pay for appellant's interest. The appellant, through his attorney, stated that he is about to file suit to have the partnership placed in receivership, which appellant has no right to do. If such a suit is brought it will irreparably damage appellee, lessen the morale of the employees, and to a material extent slow up production and prevent the acceptance of future contracts.

The relief asked is that the Court declare and determine by the true and proper construction of the partnership agreement dated May 18, 1944, that the appellee possesses the right and option to purchase the interest of appellant in the partnership in accordance with the terms of the agreement; that appellee effectively exercised his said option by the letter of January 4, 1945, aforesaid; that the appellant be required to perform specifically by assigning his interest in the partnership to appellee for its book value; that the book value of the interest of appellant as of December 28, 1944, be determined; that an injunction be issued enjoining and restraining appellant from interfering with the further operation of the partnership other than the right to examine the books and accounts to determine the book value of his interest therein; that an injunction be issued restraining the appellant from instituting any suit for a

receiver of the partnership, pending the determination of the instant case; and for other and further relief.

The Chancellor by order overruled the demurrer to this bill of complaint, and from that order the appellant appeals here. In passing on the matters here presented, we are of course confined to the pleadings in the case.

Appellant contends that this is a partnership at will and as the agreement provides that the appellee shall have the right to purchase from the appellant at any time during the life of the partnership agreement, upon ten days notice in writing, that this option cannot be exercised by the appellee after the agreement has been terminated and the partnership, at will of either partner, dissolved. It is further contended that the subject matter of the option, "any portion or all of the interest of James A. Hagan", and the price "for a sum not exceeding the book value of the share of the said James A. Hagan in said partnership. In the event the said Harry A. Dundore exercises his said option to purchase a part or parts of the interest of James A. Hagan, the sum or sums so paid by him to said James A. Hagan", are too uncertain, indefinite, and vague to make the option enforceable.

Appellee admits in the sixth paragraph of his bill that by the letter from appellant of December 28, 1944, hereinbefore referred to, that the partnership was dissolved. It is not admitted, however, that the partnership agreement was thereby dissolved.

In the case of *Corr v. Hoffman,* 256 N. Y. 254, 176 N. E. 383, 390, a copartnership was formed by a written agreement for a term of three years. In this agreement was a provision that "It is further understood and agreed that should the party of the first part (Hoffman) * * * desire, at any time before the end of the term of this contract, to purchase the interest of the party of the second part (Corr) the party of the second part will assign, set over and transfer unto the party of the first part * * * all his right, title and interest in said copartnership by the paying to him* * * of a sum * * *."

One of the questions before the Court in that case was whether the parties in continuing the partnership after the expiration of the term of the written contract, by implication agreed to continue during the existence of the partnership at will, the right conferred upon Hoffman, by the written contract, to purchase his partner's interest. That Court decided at Pages 272 and 273 of 256 N. Y., at Page 391 of 176 N. E., that "Continuance of the partnership by consent of the parties, though without express contract, may not evidence an intention to renew the partnership contract for another fixed term; it does show an unmistakable intention to continue the existing partnership relations indefinitely; and, since the existing relations are defined by the provisions of the written contract, the same provisions so far as applicable to a partnership terminable at will continue to govern these relations." Further at Page 273 of 256 N. Y., at Page 391 of 176 N. E., that Court said "A right conferred upon one partner by written contract to purchase the partnership business at the termination or expiration of the partnership is applicable to and consistent with, a partnership at will." Cases cited.

In a note in the *University of Pennsylvania Law Review*, 75 at Page 786 in commenting on the case of *Corr v. Hoffman, supra,* between the time of the decision in Appellate Division of the Supreme Court of New York (219 App. Div. 278, 219 N. Y. S. 656) and the decision in Court of Appeals (256, N. Y. 254, 176 N. E. 383, *supra*) it was said: "As a general rule, a clause giving a right of pre-emption to one of the partners is not in itself inconsistent with the incidents of a partnership at will, and is therefore operative after the termination of the partnership originally contemplated." Cases cited.

In the case of *Neilson, Junior, v. Mossend Iron Co.,* L. R., 11 App. Cas. 298, a written contract of copartnership was entered into in March, 1867, for a term of seven years, from May 31, 1866. In 1875, Neilson, Junior, the appellant, was assumed as a partner. A draft of a new

contract was proposed but never executed, in which the clauses of the contract of 1867 were proposed to be slightly modified, and the further term for which the partnership was to be carried on was for seven years, or until May 31, 1882. On May 4, 1883, the appellant, Neilson, Junior, the retiring partner, gave notice to the respondents, the Mossend Iron Company, and others, requiring that the partnership be dissolved. The other partners in the Mossend Iron Company objected to the company being wound up, and contended that the provisions of the draft contract for 1875, or 1867, were still applicable, although the partnership had become one at will.

By the terms of the 12th article of the draft contract of 1875 there was a clause providing in part: "If, three months before the termination of this contract, the whole partners of the company shall not have agreed to continue to carry on the business thereof any one or more of them who may be desirous of retiring shall be entitled to do so, and shall immediately, on the completion of the balance after mentioned, be paid out, by the partner or partners electing to continue the business, his or their share and interest in the concern, as the same shall be ascertained by a balance of the company's books, as at the termination of the contract to be completed, within not more than three months from said termination * * *."

It was held in that case in effect that the contract of 1875 was to terminate on May 31, 1882; that the period of three months before the 31st of May, 1882, was fixed for the purpose of introducing the option given to the members of the partnership; that time pervaded every part of the clause and was of the essence of the condition; that the notice of May 4, 1883, was not given in time; and therefore the appellant was not bound by the option clause. However, Lord Watson said at Page 309: "But it is not, in my opinion, inconsistent with the nature of a partnership at will that a member should agree upon its

dissolution at any time to receive payment of his share and interest in the shape of a sum of money, to be fixed with reference to a particular balance sheet, without having resort to a legal winding-up, and to leave the other members to carry on the business. Such an arrangement is in reality a mode of winding-up which is not less applicable to a contract at will, than to a contract having a definite term of endurance."

In the case at bar the option granted the appellee was not limited to a definite date as in the case last referred to. There is no provision limiting its exercise to the life of the partnership but to "the life of this partnership agreement, upon ten days notice in writing." To hold that the option of appellee expired immediately upon notice of the dissolution by the appellant is to hold that the parties intended such an option to be worthless, because by so holding at any moment after the agreement was executed the appellant could have nullified appellee's right to purchase merely by giving notice of dissolution. In the contract forming the partnership no method of dissolution is provided other than the provision in Paragraph 12, where it is stated: "Upon the death of either of said partners, or upon the purchase of the interest of said James A. Hagan, in whole or in part, by said Harry A. Dundore, or upon the mutual termination of this partnership and a division of the assets thereof, according to their respective shares, the good will of said business shall not be regarded or valued as a partnership asset."

The exercise of the option by appellee might well be considered, as pointed out by Lord Watson in the case of *Neilson, Junior, v. Mossend Iron Co.*, L. R., 11 App. Cas. 298, *supra*, as one method of dissolution or winding-up of the partnership without having to resort to a legal winding-up, "which is not less applicable to a partnership at will than to a contract having a definite term of endurance." If the particular phrase in dispute had no other meaning that is why it must have the meaning as interpreted by the Chancellor. It was said by this

Court in the case of *Phillips v. Crownfield,* 124 Md. 443, at Page 450, 92 A. 1030, at Page 1032: "It is suggested by the appellants that, by giving the appellee the first right to purchase, the equality of the partnership is destroyed, and that the appellee gains an advantage. We know of no rule of law which prevents parties to a partnership from agreeing among themselves that some of the partners may have an advantage or interest over the others. In this agreement, the provision was that, so long as the partnership continued, the partners should share the profits or losses equally, but that, when it was at an end, a settlement should be made in a particular way and the business continued, if either party desired to do so."

The option in this case was exercised by the appellee within six days of the notice of dissolution of the partnership by the appellant. Generally speaking what is reasonable time depends on the facts of each particular case. *Anderson v. Gill,* 79 Md. 312, 316, 29 A. 527, 25 L. R. A. 200, 47 Am. St. Rep. 402; *North Avenue Land Co. v. City of Baltimore,* 102 Md. 475, 63 A. 115; *Fruit Co. v. New York & B. Transportation Co.,* 104 Md. 567, 65 A. 415, 8 L. R. A., N. S. 240. It is enough to say here that the six days period was a reasonable time under all the circumstances shown by the pleadings.

The final answer to appellant's contention that the option was not exercised, "during the life of this partnership agreement, upon ten days notice in writing," is the provision of Code, 1939, Article 73A, Section 30, Chapter 175, Section 30, Acts of 1916, that "On dissolution the partnership is not terminated, but continues until the winding-up of partnership affairs is completed." From the pleadings before us the winding-up of the partnership affairs certainly was not completed within ten days after the option was exercised, which, as we have said, was within a reasonable time.

As to the contention as to the uncertainty of the expression "any portion or all of the interest of James A.

Hagan" the words mean exactly what they purport, either a part of the interest of James A. Hagan in the partnership, or what the appellee now seeks to purchase, which is all of that interest.

As to the price "for a sum not exceeding the book value of the share of the said James A. Hagan in said partnership. In the event the said Harry A. Dundore exercises his said option to purchase a part or parts of the interest of James A. Hagan, the sum or sums so paid by him to said James A. Hagan * * *", it is plain that this expression means that when the option is exercised if James A. Hagan will not accept less than the book value of his interest he must accept the full book value of that interest. Similar expressions have been held certain enough to support specific performance in a number of cases. *Kastens v. Ruland,* 94 N. J. Eq. 451, 120 A. 21; *Heyward v. Willmarth,* 87 App. Div. 125, 84 N. Y. S. 75; *Wright v. Kayner,* 150 Mich. 7, 113 N. W. 779; See Annotations 117 A. L. R. 1095, at Page 1097; 73 A. L. R. Pages 985 to 990.

The appellant finally contends that "the date upon which the book value is to be determined is not even sought to be fixed. Is it to be the book value on the date when Dundore notifies Hagan that he is exercising his option to purchase any portion or all of the latter's capital interest? Or is it the date on which such required ten-day written notice expires? And what of the date upon which payment is to be made of any such book value as of any such possible date?" Answering the last question first, the payment of the purchase price was due on January 14, 1945, which was ten days from the date the option was exercised. The appellee was ready and willing to comply on that date. Tender was made. *Chicora Fertilizer v. Dunan,* 91 Md. 144, 46 A. 347; *Johnson v. Wheeler,* 174 Md. 531, 539, 199 A. 502. The right to purchase was denied by the appellant.

From the pleading now before us and at this stage of the case, it is unnecessary to decide as of which date the book value of appellant's interest is to be ascertained.

The appellee contends that the value may be determined as of January 4, 1945, or December 29, 1944, plus appellant's share of the profits of the partnership to January 14, 1945, or interest at appellant's election. In effect this gives appellant his choice of those dates.

For the reasons herein given the Chancellor was correct in overruling the demurrer of the appellant.

*Order affirmed, with costs.*