MARDER'S NURSERIES, INC., Respondent, v JAMES B. HOPPING, JR., Appellant.

Second Department, September 9, 1991

## APPEARANCES OF COUNSEL

*Esseks, Hefter & Angel (Stephen R. Angel* and *John M. Wagner* of counsel), for appellant.

*Lazer & Aptheker (David Lazer* and *Myra Rochelson* of counsel), for respondent.

## OPINION OF THE COURT

BRACKEN, J. P.

█ The Court of Appeals recently reasserted the rule that "[i]f an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract" *(Cobble Hill Nursing Home v Henry & Warren Corp.,* 74 NY2d 475, 482, citing *Martin Delicatessen v Schumacher,* 52 NY2d 105, 109; Restatement [Second] of Contracts § 33 [1981]; *see also, Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp.,* 78 NY2d 88). The defendant in the present action for specific performance has appealed from a judgment in favor of the plaintiff, arguing that application of this rule should result in a declaration that the parties have no valid contract. Because we conclude that the parties' contract is "reasonably" definite with respect to its material terms, we disagree with this argument, and affirm the judgment appealed from.

## I

In 1982, Marder's Bridgehampton Nursery, Inc., the predecessor of the plaintiff Marder's Nurseries, Inc., as tenant, entered into a lease with the defendant James B. Hopping, Jr., as landlord. The dimensions of the demised premises, designated as "Area A", were defined on a map referred to in the lease. This lease also included a provision which allowed for the expansion of the demised premises so as to include additional land, designated as "B (farmland)", and in 1986, the demised premises were, in fact, expanded to include this area. Also, as reflected in a letter dated January 24, 1986, initialed by the defendant, the size of the demised premises was expanded so as to cover additional property, defined as "Adjunct to Farmland B". The lease between the parties included a provision granting the plaintiff an option to purchase the demised premises. The plaintiff exercised this option and, on October 30, 1986, the parties entered into a contract of sale. Four provisions of the contract are relevant to this appeal.

First, the contract contains a description of the demised

premises which refers to a "sketch marked Schedule A annexed, being the nursery center marked Area 'A', the Farmland marked Area 'B', and the area marked 'Adjunct to Farmland "B" ' ". The contract further specifies that, prior to closing, the area of the demised premises would be "adjusted" so as to allow for a "transition area" between the property to be conveyed to the plaintiff and certain other property (not the subject of the leases noted above) to be retained by the defendant.

Second, the contract includes a provision that "Paragraph 31 of [the] lease" (which provides both tenant and landlord with a certain right-of-way) would "survive delivery of deed subject to mutually satisfactory agreement covering access to Ocean Avenue".

Third, the purchase price was to be set by two appraisers, one appointed by each party, who were then to "diligently proceed to agree on the fair market value". In the event of a disagreement between the two appraisers originally designated, they (the appraisers, not the parties) were to select a third appraiser. The purchase price would then be fixed in accordance with "the decision of any two of such appraisers". A down payment of 10% of the purchase price was to be made within five days after the fixing of the purchase price. The closing was scheduled to take place within 30 days after the purchase price had been fixed.

Fourth, the contract required the plaintiff to pay the purchase price by way of certified check payable to the defendant. However, the defendant was granted the option to "give a purchase money mortgage for two-thirds * * * of the purchase price payable over ten (10) years self-amortizing at a rate of interest not to exceed the then prevailing commercial bank interest rates in the Town of Southampton, which rate shall be fixed by mutual agreement 24 hours prior to closing, as more fully set forth in a mortgage and bond annexed hereto". No mortgage or bond was annexed.

The present action was commenced in 1988. According to the complaint, both parties had had appraisals conducted in accordance with the contract. The plaintiff alleged that these appraisals had resulted in different evaluations, and that the defendant "refused to instruct the appraiser of his choosing to, along with [the plaintiff's] appraiser, select a third appraiser as contemplated by paragraph 1 of the Rider to the contract." The plaintiff further alleged that the defendant had repudi-

ated the contract, and that the defendant had failed to apply for subdivision approval in accordance with the contract. The defendant served an answer in which he asserted three counterclaims, demanding, among other things, $350,000 in damages, rescission of all leases between the parties, and rescission of "any contractual obligations that may have existed between the parties pursuant to the contract of sale dated October 30, 1986".

On or about July 22, 1988, the plaintiff moved for summary judgment in its favor (CPLR 3212) on the complaint, and to dismiss the counterclaims pursuant to CPLR 3211 (a) (1) and 3211 (a) (7). In his affidavit in support of this motion, Charles Marder, the plaintiff's president, stated that "[t]he only issue to be decided, it is submitted, is the legal one whether the Contract is in fact binding upon both sides". He averred that the plaintiff had "performed all of the acts and covenants required under the Contract" and that the defendant was therefore obligated to perform his obligations.

By affidavit dated September 20, 1988, the defendant, in opposition argued that "the alleged contract * * * is not enforceable [because it] is lacking agreement on several essential and material terms [and because] it contains express language indicating that the parties * * * contemplated further negotiations". In support of this assertion, the defendant referred specifically to the four provisions of the contract above noted. The defendant averred that, in light of the ambiguities contained in these provisions, no valid and enforceable contract ever came into existence. The defendant also served an amended answer, also dated September 20, 1988, supposedly as of right, which included an affirmative defense based on the Statute of Frauds (General Obligations Law § 5-703).

In the order appealed from dated December 30, 1988, the court (1) dismissed the defendant's three affirmative defenses, including the defense based on the Statute of Frauds, (2) dismissed the defendant's three counterclaims "without prejudice" and (3) directed the plaintiff to settle a judgment directing specific performance of the contract.

The plaintiff submitted a proposed judgment which contained several specific directives, including, for example, a provision directing a meeting between the two appraisers in order to have them select a third appraiser, and a provision that the court would select a third appraiser in the event that

the original two appraisers cannot agree. The defendant's attorney submitted his own proposed judgment, arguing that "the judgment should simply direct specific performance * * * without any mention of details". The plaintiff's attorney argued that the court "should direct, with some degree of specificity, the course to be followed by the parties".

The judgment signed by the court, entered April 13, 1988, directs specific performance, incorporates the contract into the judgment "by reference", and provides that either party may seek further equitable relief "at the foot of this Judgment * * * in order to effectuate the parties' contract and the Court's written decision".

## II

On appeal, the defendant makes two closely related arguments. First, he argues that the contract in question is unenforceable because it fails to set forth, in writing and with sufficient certainty, all of its material terms. Second, he argues that certain material terms of the contract were expressly left open for future negotiations, so that it constitutes, at most, an "agreement to agree" rather than a binding contract.

The essential argument advanced by the defendant, then, is that the parties did not make a valid contract. The defendant does not argue that, assuming that a valid contract does exist, the Supreme Court erred in its determination as to the appropriate relief to be granted in order to enforce it. Thus, in the context of this appeal, we need not decide whether the court properly directed the incorporation of the parties' contract, at least some of the provisions of which are ambiguous, into its judgment, or whether the court erred in expressly authorizing future proceedings in order to enforce the parties' contract. The issues on the present appeal are, in other words, limited to whether a valid contract exists.

The defendant-appellant's two related arguments are both based on the general rule that "[i]f an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract" (Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, 482, supra, citing Martin Delicatessen v Schumacher, 52 NY2d 105, 109, supra; Restatement [Second] of Contracts § 33 [2] [1981]). However, this doctrine has never been applied "with a heavy hand" (Cobble Hill Nursing Home v Henry & Warren Corp., supra, at 483; see,

*Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp.,
supra).* Absolute certainty has never been required. Instead,
reasonable certainty has always been viewed as sufficient to
avoid the " 'last resort' " of canceling an otherwise valid
contract *(Cobble Hill Nursing Home v Warren & Henry Corp.,
supra,* at 483, quoting *Cohen & Sons v Lurie Woolen Co.,* 232
NY 112, 114; *see also, Varney v Ditmars,* 217 NY 223, 228;
*United Press v New York Press Co.,* 164 NY 406; *Wedtke
Realty Corp. v Karanas,* 286 App Div 339, 340, *affd* 309 NY
904; *see also,* 21 NY Jur 2d, Contracts, § 20; 1 Corbin, Con-
tracts § 95). Measured against the standard of "reasonable"
certainty, the present contract, whose terms obviously are not
"absolutely" certain, must be considered valid and enforce-
able.

### A

As noted above, the defendant cited two provisions of the
contract which relate to the description of the land as being so
indefinite as to warrant cancellation of the contract. First, the
contract calls upon the parties, prior to closing, to "adjust"
the demised premises so as to allow for a "transition area".
Second, the contract calls upon the parties to make a "mutu-
ally satisfactory agreement" with respect to access to Ocean
Avenue. The defendant contends that these were "agreements
to agree" on a material term, i.e., the size and nature of the
demised premises, and that, accordingly, there was in fact
never an actual agreement as to this material term.

It is true, of course, that the extent of the property to be
conveyed is a material term of a real estate contract, so that it
must be identified with reasonable certainty *(see, Jill Real
Estate v Smyles,* 150 AD2d 640; *Elias v Serota,* 103 AD2d 410,
416; *Boyajian v Casey,* 52 AD2d 1014; 62 NY Jur, Vendor and
Purchaser, § 8). If the terms of the present contract are read
so as to require the parties to "adjust", that is, actually to
diminish the size or alter the configuration of the demised
premises at some future time prior to closing, in order to
create a "transition area" of some unspecified size, then the
contract might well be viewed as unenforceable.

However, the evidence contained in the record establishes
conclusively that the contractual provision which requires the
demised premises to be "adjusted" so as to provide a "transi-
tion area" must be read in conjunction with paragraph 31 of
the parties' original lease, which refers to a "visual buffer"

between the property leased (later to be sold) to the plaintiff, and the property to be retained by the defendant. The plaintiff asserted, without any sufficiently specific denial by the defendant, that the "transition area" to be defined by future agreement was the same as the "visual buffer" which the plaintiff had already established pursuant to section 31 of the lease. The parties did not contemplate any future negotiations which would lead to a future change in the actual dimensions of the demised premises. The contractual provision which refers to a future "adjustment" in the demised premises is thus not a material term.

The same analysis applies to the defendant's claim that the contract is unenforceable because it required the parties to agree, in the future, as to the parties' access to Ocean Avenue. This contractual provision is likewise immaterial, when considered in light of the fact that the contract also provides, in effect, (1) that if no such agreement is reached, paragraph 31 of the lease would survive the closing, and (2) that paragraph 31 of the lease grants the plaintiff a right-of-way to Ocean Avenue via a dirt road which it has used since 1982.

## B

■ The defendant also argues that the contractual provision regarding the fixing of the purchase price is so vague as to suggest that no agreement was ever reached as to this material term. The defendant is undoubtedly correct in asserting that the purchase price is a material term of a real estate contract, and that it must, therefore, be defined with reasonable certainty (see, Martin Delicatessen v Schumacher, 52 NY2d 105, 110, supra; Willmott v Giarraputo, 5 NY2d 250; Ansorge v Kane, 244 NY 395; Sheehan v Culotta, 99 AD2d 544, 545; 62 NY Jur, Vendor and Purchaser, § 9). However, the contractual mechanism for the determination of the purchase price, while flawed, is reasonably certain.

In Cobble Hill Nursing Home v Henry & Warren Corp. (74 NY2d 475, 484, supra) the Court of Appeals held that a contract was not void on the ground of indefiniteness where it left the purchase price to be determined by a third party and referred that third party to a formula found in "the Public Health Law and all applicable rules and regulations". Also, in Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp. (78 NY2d 88, supra), the court upheld a lease renewal option, where the rent to be paid in the event that the option were

exercised was to be determined "by arbitration as provided for by the Civil Practice Act of the State of New York" *(Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp., supra,* at 90).* While the present case is analogous, it does differ in that the purchase price is not to be fixed by a single arbitrator or government agency, but rather by two individuals out of three. The method designed by the parties, moreover, is seriously flawed, since there is no guarantee that the first two appraisers would agree, or that, in the event of their disagreement, they would be able to agree as to the identity of the third appraiser. Further, there is no guarantee that the third appraiser, if he or she agreed to the appointment, would concur with either one of the original two.

We nonetheless conclude that this provision is not so indefinite as to require cancellation of the contract. In *Tonkery v Martina* (167 AD2d 860 [4th Dept, Nov. 16, 1990], *affd* 78 NY2d 893), the Appellate Division, Fourth Department, faced a similar issue. The parties had agreed to an option to purchase certain property, with the price to be the property's "fair market value" as determined either by a bona fide offer from a third party, or by way of appraisal. In the absence of a bona fide offer, the parties had each selected an appraiser pursuant to their contract, and these two appraisers were apparently unable to agree as to the identity of the third appraiser. The Fourth Department stated that "upon the failure of the appraisers selected by the parties to agree upon a third appraiser in accordance with the contract, the court had the authority to make the finding of fair market value in order to carry out the intention of the parties" *(Tonkery v Martina, supra,* at 861, citing *Matter of Fletcher,* 237 NY 440, 449).

The Court of Appeals affirmed the order of the Fourth Department *(Tonkery v Martina,* 78 NY2d 893, *supra),* stating that the price term was sufficiently definite since it "indicate[d] clearly that the parties both intended to commit the calculation of price to a third party and agreed to be bound by the result" *(Tonkery v Martina, supra,* at 895). In so holding, the Court of Appeals, as had the Fourth Department, necessarily rejected the argument that the price term was unenforceably vague because "it [did] not specify how the [three] appraisers [were] to determine the amount of the purchase price" (at 894). The rule to be derived from the *Tonkery* case *(supra)* is that a contract should not be canceled solely on the ground that the parties, having stipulated that the purchase

price was to be determined by a group of appraisers, failed to foresee all possible obstacles or hindrances which might arise during the course of the appraisal procedure.

In the present case, the parties agreed to a purchase price that would reflect the "fair market value" of the property. Several courts have held that such an agreement as to purchase price is sufficiently definite *(see, e.g., Goodwest Rubber Corp. v Munoz,* 170 Cal App 3d 919, 216 Cal Rptr 604; *Miller v Bloomberg,* 26 Ill App 3d 18, 324 NE2d 207, 208; *Portnoy v Brown,* 430 Pa 401, 243 A2d 444, 447-448; *Hanna v Bauguess,* 49 Md App 87, 430 A2d 104, 108; *Creek Ranch v New Jersey Turnpike Auth.,* 75 NJ 421, 383 A2d 110, 116; *Mose Cohen & Sons v Kuhr,* 13 Ohio Op 2d 453, 171 NE2d 207, 213, *affd* 13 Ohio Op 2d 460, 171 NE2d 216; *see also,* 1 Williston, Contracts § 41; 17 Am Jur 2d, Contracts, §§ 41, 84). That the procedure by which the "fair market value" is to be determined lends itself to stalemate is not a fatal defect since, as expressly noted by the Fourth Department in the *Tonkery* case *(supra),* and as implicitly sanctioned by the Court of Appeals in its affirmance, a court may break any stalemate by determining fair market value itself *(see also, Kane v McDermott,* 191 Ill App 3d 212, 547 NE2d 708 [purchase price fixed as fair market value to be determined by three disinterested appraisers]; *Hanna v Bauguess, supra* [market value to be fixed in accordance with average of three appraisals]; *North v Robinette,* 527 SW2d 95 [Tenn] [parties agreed to permit Chancellor to appoint third appraiser]).

The potential need for judicial intervention should not, in other words, be considered fatal to the parties' agreement. In the *166 Mamaroneck Ave. Corp.* case *(supra),* the Court of Appeals expressly approved of a contract which provided that a material term of the contract would be left to an arbitrator, and which incorporated the provisions of the former Civil Practice Act regarding arbitration (now contained in CPLR article 75). These provisions allow for judicial intervention, and include a provision authorizing a court to select an arbitrator if the parties themselves cannot agree (CPLR 7504), as well as one authorizing judicial review of the arbitrators' decision (CPLR 7510, 7511). The judgment under review in the present case, as we view it, properly reserves to the court the power, upon application of a party, to appoint a third appraiser and, in the event that two of the three appraisers are unable to reach an accord, to make its own finding as to the fair market value of the premises. This sort of judicial inter-

vention is completely consistent with the holdings of the Court of Appeals in the *Tonkery* and *166 Mamaroneck Ave. Corp.* cases *(supra)*. Thus, the possible need for further judicial intervention in the present case cannot be regarded as determinative.

Our decision in the present case is also implicitly supported by the recent decision of the Appellate Division, Third Department, in the case of *Bessen v Glatt* (170 AD2d 924). In that case, two tenants in common had agreed that in the event that one wished to purchase the other's interest, the purchase price would be determined by an appraisal procedure virtually identical to the one under review in the present case. Three appraisers were duly appointed, but each predictably arrived at a different value. One tenant in common (the selling tenant) sought partition, the other (the buying tenant) sought specific performance. Implicitly recognizing that the parties' contract, including its provisions governing the methodology by which the purchase price was to be determined, was enforceable, the court held that the action for partition was improper since the buying tenant had not been given an opportunity to purchase the seller's interest, and also held that the action for specific performance was premature because there was no proof that the three chosen appraisers were unable or unwilling to confer with one another in order to arrive at a price. The court intimated that specific performance would be an appropriate remedy in the event that the appraisers arrived at a true impasse in their discussions.

The problematic nature of the method designed by the parties for arriving at "fair market value", therefore, should not require cancellation of the contract, since this does not, as the defendant contends, make out only an agreement to agree *(cf., Martin Delicatessen v Schumacher*, 52 NY2d 105, 110, *supra)*. In the instant case the Supreme Court may, in accordance with the terms of its judgment, entertain applications for the appointment of a third appraiser, or fix the fair market value after a hearing on the issue. Whether specific performance should have been directed only after the price was finally fixed is not a question now before us, because, as noted above, the defendant-appellant argues only that the contract is invalid, not that the court's method of enforcing it is inappropriate.

## C

The defendant also argues that the provision of the

contract which grants the seller the option of giving a purchase-money mortgage is indefinite because it fails to define the rate of interest which would be applicable. The general rule is that "the terms * * * of a mortgage subject to which a purchaser is to take title to real property are essential and material elements of the contract" *(Read v Henzel,* 67 AD2d 186, 189; *see also, Willmott v Giarraputo, supra; Ansorge v Kane,* 244 NY 395, *supra; Ashkenazi v Kelly,* 157 AD2d 578, 579; *Monaco v Levy,* 12 AD2d 790; *see also, Lencioni v Brill,* 50 Ill App 3d 802, 365 NE2d 1169 [phrase "standard form mortgage" indefinite]; *Carta v Marino,* 13 Conn App 677, 538 A2d 1091; *Chambers v Jordan,* 257 Md 144, 262 A2d 505; *cf., Walker v Anderson,* 131 Ga App 596, 206 SE2d 833). The complete failure to specify an interest rate (or, possibly, a term or a method of amortization) would generally result in the denial of specific performance. However, we regard the present case as significantly different.

In the present case, the parties were left to agree as to the interest rate to be paid on the purchase-money mortgage, with the reference point being the "commercial bank interest rates in the Town of Southampton". This circumstance might have resulted in a denial of specific performance but for the obvious fact that performance of the contract is not conditioned on the offering, or the taking, of the purchase-money mortgage. The plaintiff is presumably obligated to pay cash, and the defendant is given, at most, the option to offer a purchase-money mortgage with respect to two thirds of the purchase price, which the buyer has no obligation to accept. Since the seller is not required to offer a purchase-money mortgage and the buyer is not required to accept it, terms of the contract relating to a purchase-money mortgage should not be considered material.

### III

For all of the foregoing reasons, we agree with the Supreme Court that the provisions of the present contract are not so indefinite as to warrant a declaration that the contract is invalid and unenforceable. The defendant has challenged only the contract's enforceability, and not the method of enforcement chosen by the Supreme Court. Thus, there are no grounds for disturbing the judgment.

Accordingly, the judgment is affirmed. The appeal from the intermediate order must be dismissed because the right of

direct appeal therefrom terminated with the entry of judgment in the action (see, Matter of Aho, 39 NY2d 241, 248). The issues raised on appeal from the order are brought up for review and have been considered on the appeal from the judgment (CPLR 5501 [a] [1]).

KOOPER, HARWOOD and BALLETTA, JJ., concur.

Ordered that the appeal from the order is dismissed; and it is further,

Ordered that the judgment is affirmed; and it is further,

Ordered that the plaintiff is awarded one bill of costs.